**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

**AT SEATTLE**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>Plaintiff,<br>v.<br>JON P. KIPP,<br>Defendant. | No.<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission (the "SEC") alleges:

## SUMMARY OF THE ACTION

1. This action involves insider trading by Jon P. Kipp ("Defendant") in the common stock of Funko, Inc. ("Funko"), a publicly traded pop-culture consumer products company, in advance of Funko's July 13, 2023 after-market public disclosure that its then-Chief Executive Officer ("CEO") would be taking a leave of absence and cease serving as the company's CEO. On the next trading day after this announcement, the closing price of Funko stock fell approximately 19 percent, dropping from $10.07 to $8.15 per share.


**Securities and Exchange Commission**
44 Montgomery Street, Suite 700
San Francisco, California 94104
(415) 705-2500

2. Defendant breached the duties of trust and confidence that he owed to the CEO—arising from their decades-long personal relationship, history of sharing intimate confidences, and expectation of confidentiality—by misappropriating material nonpublic information the CEO disclosed to him in private communications. On July 11, 2023, the CEO informed Defendant that Funko's Board of Directors had placed him on a mandatory paid sabbatical and that he planned to leave the company. Two days later, Defendant used this material nonpublic information to sell all 247,335 Funko shares he owned, avoiding approximately $483,746.40 in losses when Funko's stock price fell the following day.

3. By engaging in the conduct alleged in this Complaint, Defendant violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

4. The SEC brings this action pursuant to Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u-1].

5. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa].

6. Defendant, directly or indirectly, made use of the means or instruments or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein.

7. Venue is proper in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendant resides in this District and certain of the acts, practices, courses of business, and transactions constituting the violations of the federal securities laws alleged herein occurred within this District. Pursuant to LCR 3(e)(1), assignment to the Seattle Division is appropriate because Defendant resides in King County and a substantial part of the relevant conduct occurred in King County.



**Securities and Exchange Commission**
44 Montgomery Street, Suite 700
San Francisco, California 94104
(415) 705-2500

## DEFENDANT

8. **Jon P. Kipp**, age 62, resides in Kirkland, Washington. Defendant was retired during the relevant period, and previously worked at Funko from 2005 to 2013 and from 2015 to 2018.

## RELEVANT ENTITY

9. **Funko, Inc.** is a publicly held company incorporated in Delaware and headquartered in Everett, Washington. Funko's common stock is registered under Section 12(g) of the Exchange Act and trades on the Nasdaq Stock Market under the ticker symbol "FNKO."

## FACTUAL ALLEGATIONS

10. Funko is a pop culture consumer products company that designs, sources, and distributes licensed collectibles and related merchandise.

11. Defendant served as an informal advisor to Funko from 2005 to 2013 and later as Funko's Executive Vice President of Operations from 2015 until retiring in 2018.

12. From at least 2017 to 2018, Funko maintained an Insider Trading Compliance Policy ("Insider Trading Policy") that prohibited all officers, directors, and employees from purchasing or selling Funko securities while in possession of material, nonpublic information relating to the company or its securities.

13. The Insider Trading Policy, among other things, defined insider trading and identified categories of material information, including information concerning management or control changes. From 2017 to 2018 while he was Executive Vice President of Operations at Funko, Defendant was subject to that policy and either knew or should have known how it defined material information.

14. In addition to working closely together while Defendant was at Funko, Defendant and the CEO shared a close personal relationship dating back decades. They attended high school together, were college roommates, and regularly communicated by phone, text message, and in person.

15. Defendant and the CEO had a history, pattern, and practice of sharing confidences and relying on one another for personal support. Each expected the other to keep shared


**Securities and Exchange Commission**
44 Montgomery Street, Suite 700
San Francisco, California 94104
(415) 705-2500

information confidential. For example, the CEO confided in the Defendant about details of his marriage, sought Defendant's financial advice, and appointed Defendant as trustee for a trust established for the benefit of the CEO's children.

16. On July 3, 2023, Defendant instructed his investment adviser representative (the "Adviser") to sell all of his shares of Funko if Funko's stock price reached $12. That day, the stock's closing price was $10.09.

17. Defendant further instructed the Adviser that if Funko's stock price did not reach $12 by July 31, 2023, the Adviser should sell all of his Funko shares at market price that day.

18. On July 4, 2023, Funko's Board of Directors instructed the CEO to step down and take a mandatory six-month leave of absence.

19. On July 11, 2023, the CEO texted Defendant stating that he would be available to join Defendant on a trip to Montana. The CEO further explained via text message that the Board had placed him on a mandatory, paid, six-month sabbatical and that he planned to leave Funko permanently.

20. The CEO's disclosure to Defendant was nonpublic and material, as it concerned a significant change in Funko's senior management. Defendant knew or was reckless in not knowing that this information was material and nonpublic.

21. Defendant also knew or was reckless in not knowing that the CEO shared this information in confidence, and that Defendant owed the CEO a duty of trust and confidence not to use that information for securities trading.

22. At the time of the July 11, 2023 text messages, Defendant held 247,335 shares of Funko common stock.

23. On July 13, 2023, at approximately 9:30 a.m. Pacific Time, Defendant telephoned the Adviser to change his previous instruction and instructed the Adviser to now sell all of his Funko shares that day at the market price.

24. Later that day, Defendant sold all 247,335 of his Funko shares at an average price of approximately $10.11 per share, generating net proceeds of $2,499,527.

25. Defendant did not disclose his July 13, 2023 Funko stock sales to the CEO.

26. After the stock market closed on July 13, 2023, Funko publicly disclosed that the CEO would take a leave of absence and cease serving as Funko's CEO.

27. On July 14, 2023, Funko's common stock closed at $8.15 per share, a 19% decline from the previous day's closing price of $10.07.

28. As a result of selling his shares before the public disclosure, Defendant avoided approximately $483,746.40 in losses.

29. Defendant's trades on July 13, 2023 were executed on the basis of material, nonpublic information that Defendant misappropriated from the CEO and in violation of the duty of trust and confidence he owed to the CEO.

30. Defendant knew, or was reckless in not knowing, that by trading Funko securities using material nonpublic information obtained from the CEO, he breached his duty of trust and confidence to the CEO in violation of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5

31. The SEC realleges and incorporates by reference paragraphs 1 through 30 as though fully set forth herein.

32. By engaging in the conduct described above, Defendant, in connection with the purchase or sale of securities, directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, with scienter:

(a) employed devices, schemes, or artifices to defraud;

(b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

(c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

33. By engaging in the foregoing conduct, Defendant violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that this Court enter a Final Judgment:

I.

Finding that Defendant committed the violations alleged herein;

II.

Permanently enjoining Defendant from directly or indirectly violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5];

III.

Ordering Defendant to disgorge all ill-gotten gains he received as a result of the alleged violations with prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

IV.

Ordering Defendant to pay a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

V.

Retaining jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

VI.

Granting such other and further relief as this Court may deem just, equitable, and necessary.

**DEMAND FOR JURY TRIAL**

The SEC hereby demands a trial by jury on any and all issues in this action so triable.

Dated: September 14, 2026.

Respectfully submitted,

/s/

Duncan C. Simpson LaGoy
(Conditionally Admitted Pursuant to LCR 83.1(c)(2))
Securities and Exchange Commission
44 Montgomery Street, Suite 700
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501
Email: simpsonlagoyd@sec.gov
*Attorney for Plaintiff Securities and Exchange Commission*